IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 6:22-cv-1247 |
| vs. | ) ) | |
| SOCIETY6, LLC, a Delaware corporation, | ) ) | COMPLAINT |
| Defendant, | ) ) | |
| DOES 1 through 10, | ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

**COMPLAINT**

Plaintiff Gibson Brands, Inc. ("Gibson" or "Plaintiff") for its Complaint against Defendant

Society6, LLC ("Society6" or "Defendant"), and DOES 1 through 10 alleges as follows:

**Nature of Action**

1.       This is an action for direct trademark infringement, trademark counterfeiting, unfair

competition, trademark dilution, contributory trademark infringement, vicarious liability, and other

related causes of action under federal, state, and common law arising from Defendant's

unauthorized use of Gibson's GIBSON® Word Trademark (U.S. Reg. No. 1545311; U.S. Reg. No.

5551068), EPIPHONE® Word Trademark (U.S. Reg. No. 1957393; U.S. Reg. No. 5419164),

MAESTRO® Word Trademark (U.S. Reg. No. 3165811), Maestro (Stylized) Design® Trademark

(U.S. Reg. No. 2624578), the Gibson (Stylized) Design® Trademark (U.S. Reg. No. 0510594; U.S.

Reg. No. 0866698; U.S. Reg. No. 0989617; U.S. Reg. No. 5384494), Gibson with Star Design®

Trademark (U.S. Reg. No. 4301646), the Epiphone (Stylized) Design® Trademark (U.S. Reg. Nos.

0964189 and 4129178), KRAMER® Word Mark (U.S. Reg. No. 1888387), the GIBSON GIVES®

Word Trademark (U.S. Reg. No. 6356856), Dove Wing Peghead Design® Trademark (U.S. Reg. No. 1020485; U.S. Reg. No. 6359307), LES PAUL® Word Mark (U.S. Reg. No. 1539282), Les Paul Body Design® Trademark (U.S. Reg. No. 1782606; U.S. Reg. No. 6269872), Flying V Body Design® Trademark (U.S. Reg. No. 2051790; U.S. Reg. No. 6269870), Flying V Peghead Design® Trademark (U.S. Reg. No. 3976202), FLYING V® Word Mark (U.S. Reg. No. 1216644), ES Body Design® Trademark (U.S. Reg. No. 2007277; U.S. Reg. No. 6351671), Explorer Body Design® Trademark (U.S. Reg. No. 2053805), SG Body Design® Trademark (U.S. Reg. No. 2215791), Firebird Body Design® Trademark (U.S. Reg. No. 4107670), FIREBIRD® Word Trademark (U.S. Reg. No. 5628009; U.S. Reg. No. 4006293), Bell Shaped Truss Rod Cover Design® Trademark (U.S. Reg. No. 1022637), Epiphone Mustache Peg Head Design® Trademark (U.S. Reg. No. 2367539), ES® Word Trademark (U.S. Reg. No. 2599297), SG® Word Trademark (U.S. Reg. No. 3931128), Split Pineapple Inlay Design® Trademark (U.S. Reg. No. 1008798), Split Diamond Inlay Design® Trademark (U.S. Reg. No. 1008799), Explorer Headstock Design® Trademark (U.S. Reg. Nos. 1567052 and 1934543), EXPLORER® Word Trademark (U.S. Reg. No. 2641548), the J-200® Word Trademark (U.S. Reg. No. 3863734), J-200 Pick Guard Design® Trademark (U.S. Reg. No. 3892470), Mustache Bridge Design® Trademark (U.S. Reg. No. 1911282), Hummingbird Pick Guard Design® Trademark (U.S. Reg. No. 3889103), HUMMINGBIRD® Word Trademark (U.S. Reg. No. 1931670), Moderne Body Design® Trademark (U.S. Reg. No. 3607851), MODERNE® Word Trademark (U.S. Reg. No. 3588609), Gibson Pure (Stylized) Design® Trademark (U.S. Reg. No. 2738824), Fern Headstock Design® Trademark (U.S. Reg. No. 4706482), Firebird Logo® Trademark (U.S. Reg. No. 6862452), Fuzztone (Design)™, (collectively "Gibson Marks") in the United States.

2.     Defendant is in the business of marketing, promoting, advertising, and selling apparel and other products on Society6's website accessible via the domain name SOCIETY6.COM ("Society6's Website").

3.      Defendant markets, promotes, advertises, and sells products, primarily apparel, that bears Gibson's intellectual property (the "Infringing Products") on Society6's Website.  Gibson has placed Defendant on express notice of Gibson's trademark rights by submitting numerous objections, starting in November 2022, and continuing to the present, encompassing over 500 items offered and sold by Defendant that are the subject of this Complaint.  Despite such objections and despite the fame of the Gibson Marks, Defendant nonetheless continued, and continues to this day, to market, promote, advertise, manufacture, and sell Infringing Products bearing Gibson's intellectual property on Society6's Website.

4.      Specifically, despite Gibson's objections: (a) Society6 continues to advertise and sell the Infringing Products bearing the identical Gibson Marks cited in Gibson's prior objections, (b) Society6 continues to allow the same anonymous artists that are repeat infringers of Gibson's intellectual property and identified in Gibson's prior objections to offer additional Infringing Products on Society6's Website, and (c) Society6 even continues to advertise and sell numerous Infringing Products bearing designs *identical* to designs of Infringing Products that were the subject of Gibson's prior objections.  Representative examples of the Infringing Products offered and sold by Society6 are shown below:



5.      Defendant is infringing the Gibson Marks; such infringement is likely to dilute and tarnish the famous Gibson Marks; such infringement constitutes trademark counterfeiting of the registered Gibson Marks; and/or constitute unfair competition; and such infringement has caused and will continue to cause, unless enjoined, irreparable harm to Gibson, Gibson's Marks, and the consuming public.

6.      Gibson seeks injunctive and other relief from Defendant's unauthorized use of Gibson's intellectual property, including without limitation an injunction enjoining Defendant from engaging in its unlawful activities, statutory damages for counterfeiting, Defendant's profits, Gibson's actual damages, and Gibson's attorneys' fees and costs.

### The Parties

7.      Gibson is a Delaware corporation with a principal place of business at 209 10th Avenue South, Nashville, Tennessee 37203.

8.      Upon information and belief, Defendant Society6 is a Delaware corporation with a principal place of business at 1655 26th Street, Santa Monica, California 90404.

9.      Upon information and belief, Defendant Society6 is engaged in the promotion and sale of various products containing the Gibson Marks in the United States, including in this District, through its business, catalogs, distributors, and its websites at www.society6.com.

10.     The true names and capacities of Defendants DOES 1 through 10 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is, in some manner, responsible for the events and happenings herein referred to, either contractually or tortuously, and caused damage to the Plaintiff as herein alleged.  When Plaintiff ascertains the true names and capacities of DOES 1 through 10, it will ask leave of this Court to amend its Complaint by setting forth the same.

## Jurisdiction and Venue

11.     Original subject matter jurisdiction of this Court is based on 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. §1338(a) and (b) (Acts of Congress relating to trademarks and related actions), Sections 39 and 43(a) and (c) of the United States Trademark Act of 1946 ("Lanham Act"), as amended (15 U.S.C. §1121 and 1125(a)(c)). This Court has supplemental jurisdiction over Gibson's state law claims pursuant to 28 U.S.C. §1367 (Supplemental Jurisdiction) because they are substantially related to Gibson's federal claims and arise out of the same case or controversy, as well as the principles of pendent jurisdiction.

12.     This action arises out of wrongful acts including advertising, offering for sale, selling, and distributing infringing products by Society6 within this judicial district.  This Court has personal jurisdiction over Defendant Society6 under the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as Society6 conducts business in the state of Texas and the exercise of such jurisdiction is consistent with due process under the United States Constitution.  In addition, Society6 has minimum contacts within the State of Texas and the Western District of Texas; and

Society6's contacts with the State of Texas arise from, or are directly related to, Plaintiff's cause of action.

13.     Venue is proper in this district under 28 U.S.C. §1391(b) and (c), as Society6 is subject to personal jurisdiction in this District and therefore Society6 resides in this district under 28 U.S.C. §1391 (c) and as a substantial part of the events giving rise to these claims occurred in this District.

**Gibson's Use and Ownership Of The Gibson Marks**

14.     Plaintiff Gibson is engaged in the business of developing, manufacturing, and selling musical instruments, including electric guitars, acoustic guitars, basses, mandolins, and other stringed instruments under the famous GIBSON® and EPIPHONE® Trademarks. Gibson has been manufacturing and selling stringed instruments since the 1890s.

15.     Gibson guitars are sold worldwide.  Gibson's instruments have gained worldwide recognition and reputation, winning awards for its designs.

16.     Gibson has spent millions of dollars in the advertising and promotion of the Gibson Marks, which have been used in conjunction with various Gibson stringed instruments.

17.     Gibson has sold millions of guitars bearing the Gibson Marks.

18.     Gibson's authorized dealers sell products bearing the Gibson Marks in every state in the United States and numerous countries around the world.

19.     Gibson products bearing the Gibson Marks are featured in nearly every guitar trade magazine that includes guitars.

20.     Gibson products bearing the Gibson Marks have received a substantial amount of unsolicited press including:

(a)      being featured in movies such as A Star is Born, Back to the Future, Black Snake Moan, Bandslam, It Might Get Loud, This Is Spinal Tap, The Return of Spinal Tap, Honey I

Blew Up the Kid, August Rush, Country Strong, The Runaways, Jailhouse Rock, School of Rock, and countless other music documentaries;





(b)      being featured throughout the Rock and Roll Hall of Fame, Musicians Hall of Fame and Museum, and the National Guitar Museum's exhibit "Guitar: The Instrument That Rocked The World";

(c)      being featured on television shows such as House, Saturday Night Live, Late Night with Jimmy Fallon, and American Idol;

(d)      being featured on the cover of countless popular guitar and music magazines;























(e)     being featured on the cover of countless music albums;



























(f)      being featured in countless music videos;

(g)      being featured within articles of countless popular guitar, rock, and other pop culture magazines;

(h)      guitar encyclopedia books devote a significant amount of space to the Gibson guitars displaying the Gibson Marks;





        (i)      books written about rock history or famous guitarists feature the Gibson guitars displaying the Gibson Marks;

        (j)      books have been written specifically about the fame of the Gibson guitars displaying the Gibson Marks;
















(k)      being featured in countless concerts when used by famous musicians on stage; and

(l)      The Academy of Science & Technology, according to the Guinness Book of World's Record, built the world's largest playable guitar, a 43.5 feet long and 16 feet wide replica of a Gibson Flying V®, and that guitar has been displayed in the Exhibit "The Guitar" the Instrument that Rocked the World, and displayed at, among other places, the Carnegie Science Center and Liberty Science Center in Jersey City, New Jersey and the Bullock Texas State History Museum in Austin Texas.





21.     As a result of the quality of Gibson's products and the extensive sales, licensing and marketing, advertising, and promotion of these products under the Gibson Marks, the Gibson Marks have become famous trademarks that are widely and favorably known by the general consumers in Texas, in the United States, and elsewhere as designating high quality and dependable products originating exclusively from Gibson and its related companies.   As a direct result of Gibson's promotional efforts and extensive sales, the Gibson Marks have been prominently placed in the minds of the public.   The Gibson Marks are distinctive designs owned exclusively by Gibson,

achieving acquired distinctiveness and fame many years of use with Gibson spending millions of dollars on promotion of the Gibson Marks.  Consumers are exposed to the Gibson Marks through magazines, newspapers, television, and the Internet.  As a result, the Gibson Marks have become widely known and valuable trademarks, possessing a strong secondary meaning among consumers.  Consequently, the Gibson Marks have come to symbolize the enormous goodwill of Gibson's business in Texas, in the United States, nationwide, and elsewhere.  No other manufacturer lawfully uses the Gibson Marks or any other substantially similar marks for similar types of goods without Gibson's authorization.

22.     The Gibson Marks have been famous in Texas, in the United States, nationwide, and elsewhere since long prior to the acts complained of herein. The Gibson Marks have been used exclusively nationwide and has been used exclusively by Gibson.

23.     As a result of the enormous recognition and fame of the Gibson Marks, Gibson has expanded use of the Gibson Marks to apparel, patches, decals, jewelry, toys, and other memorabilia.  Gibson has extensively promoted the Gibson Marks across Gibson's far-reaching line of products and services over the years.  As a result of Gibson leveraging the Gibson Marks, consumers instantly recognize Gibson as the secondary source of the memorabilia displaying the Gibson Marks.

24.     Over the years, Gibson has spent millions of dollars advertising the memorabilia displaying the Gibson Marks.

25.     Gibson has sold millions of dollars' worth of memorabilia displaying the Gibson Marks signifying to consumers that Gibson is the secondary source of the memorabilia.

26.     Apparel, posters, and decals are a significant part of Gibson's business and has been for many years.  For decades, Gibson has offered and sold, itself and through its dealers and licensees, clothing apparel, posters, decals among other goods and services.  During this same time, Gibson has offered and sold through Gibson's licensees a wide range of merchandise bearing the

Gibson Marks, including many licenses for various apparel products, as well as licenses for mugs, posters, and other goods and services. Representative examples of Gibson's licensed apparel products and decals are shown below.



27. Numerous authorized licensees of Gibson in the U.S. sell and have sold for decades a wide range of merchandise bearing the Gibson Mark, including many licensees specifically for

various apparel products, as well as licenses for other merchandise such as decals, mugs, posters, and other memorabilia.

28.     The Gibson Marks are premium brands and Gibson has a reputation for providing a wide variety of high-quality merchandise under those brands itself and through its dealers and licensees.  Given the incredible commercial success of Gibson's guitar business over the last century and its status for many years as a famous, iconic, and cult brands, there has long been a strong demand from guitar players and enthusiasts as well as the general public for other products bearing the Gibson Marks, so they can show their affinity for Gibson and its products and brands.  To satisfy this demand and to further build awareness of the Gibson Marks, Gibson has for decades engaged in an extensive program licensing the Gibson Marks (and other affiliated trademarks) to various licensees for use on a wide range of products including apparel, mugs, decals, posters, and jewelry just to name a few.  Consistent with its image as a premium brand, Gibson positions its licensed merchandise as high-quality merchandise at a premium price point.  Gibson's licensed products and/or associated labeling and packaging bear one or more of the Gibson Marks.

29.     Gibson has standards and guidelines to which all authorized licensed products branded with the Gibson Marks, including apparel, must adhere.  These standards and guidelines allow Gibson to control the quality and appearance, among other things, of licensed products offered in connection with the Gibson Marks.  Moreover, all licensed merchandise, including apparel, is subject to Gibson's prior written approval before it is manufactured, promoted, and sold to the public by Gibson's licensees.  To ensure and maintain the premium and high-quality reputation of the licensed merchandise sold under the Gibson Marks, Gibson requires its licensees, including its licensees for apparel, posters, and decals, to comply with its extensive and stringent quality-control standards, including: (1) licensees must first submit product concept and artwork for Gibson's prior written approval, (2) once the concept and artwork is approved, licensees must

submit a pre-production product sample for Gibson's written approval, and (3) once the pre-production product sample is approved, licensees must submit for Gibson's prior written approval a production sample of the actual product that will be sold to the public.  Licensees cannot promote or advertise any licensed products without completing all of these steps.  As part of this quality-control review process, Gibson carefully reviews the licensed products in numerous respects, including the materials used in making the licensed products, the quality of the craftsmanship and construction of the products, the design, style, and appearance of the products, and the overall quality of the products.

30.     Gibson has achieved significant commercial success in the stringed instrument business, which includes the sales and servicing of stringed instruments and the sales of stringed instruments parts, accessories, and complementary gear.  Gibson's licensed products business has also been successful, resulting in significant revenue.  The majority of Gibson's licensing royalty revenues are from its apparel licensees.  Historically and presently, Gibson has numerous active apparel licensees at any given time.

31.     The Gibson Marks have been extensively promoted nationwide across Gibson's many product lines.  Gibson markets and sells stringed instruments and the sales of stringed instruments parts, accessories, and complementary gear through an extensive network authorized dealers located throughout the country.

32.     Gibson's apparel products are also sold online through its www.gibson.com website, authorized dealers' websites, and websites of Gibson's authorized licensees.  Gibson's authorized retailer, Guitar Center, sells authorized licensed apparel in this district at its location at 4314 W. Waco Dr., Waco, Texas 76710.

33.     Finally, Gibson's apparel products can be purchased at its flagship store, the Gibson Garage, located in Nashville, Tennessee.

## Gibson's Trademark Registrations

34.     In addition to its long standing and strong common law rights in the Gibson Marks,

Gibson owns, among others, the following federal trademark registrations for the Gibson Marks:

| Mark | Reg. No.–Reg. Date | Listed Goods and Services |
|---|---|---|
| GIBSON® Word Mark | 1545311–June 27, 1989* | Musical stringed instruments, namely, guitars, basses, banjos, and mandolins |
| GIBSON® Word Mark | 5551068– August 28, 2018 | Jewelry, bumper stickers, pens, posters, furniture, apparel, and toys |
| GIBSON® Word Mark | 6839982– September 6, 2022 | Bandanas, knit face masks |
| EPIPHONE® Word Mark | 1957393–February 20, 1996* | Amplifiers for electric guitars, stringed musical instruments, namely acoustic guitars, electric guitars, basses, banjos, and mandolins |
| EPIPHONE® Word Mark | 5419164–March 6, 2018 | Hats, hoodies, sweatshirts, and t-shirts |
| MAESTRO® Word Mark | 3165811–October 31, 2006* | Musical instruments, namely acoustic guitars and electric guitars, and parts and accessories |
| Maestro (Stylized) Design®  | 2624578–September 24, 2002* | Devices – namely, foot-operated sound effect generators, rack mounted sound effect generators and table top sound effect generators for modifying the signals of electrical musical instruments |
| Gibson (Stylized) Design®  | 0510594– June 7, 1949* | Guitars, mandolins, violins, banjos, ukuleles, and cases therefor, strings for fretted instruments and violin bows |
| Gibson (Stylized) Design®  | 0866698–March 18, 1969* | Polish for musical instruments, electronic amplifiers, speakers, musical instruments of the fretted type, and musical magazines |

| | | |
|---|---|---|
| Gibson (Stylized) Design®<br> | 0989617–July 30, 1974* | Musical instruments |
|  | 5384494–January 23, 2018 | Series of non-fiction books in the field of music related topics |
| Gibson with Star Design®<br> | 4301646– March 12, 2013* | Hats and t-shirts |
| Epiphone (Stylized) Design®<br> | 0964189–July 17, 1973* | Stringed musical instruments, specifically guitars, electric guitars, banjos and mandolins |
| Epiphone (Stylized) Design®<br> | 4129178–April 17, 2012* | Banjos, bass guitars, electric guitars, mandolins, musical instruments |
| KRAMER® Word Mark | 1888387–April 11, 1995* | Guitars and basses and guitar strings |
| GIBSON GIVES® Word Mark | 6356856–May 18, 2021 | Charitable fundraising services and charitable services, namely, providing musical instruments, musical equipment, and musical education classes |
| Dove Wing Peghead Design®<br> | 1020485– September 16, 1975* | Banjos, guitars, and ukuleles |

| | | |
|---|---|---|
| Dove Wing Peghead Design®  | 6359307– May 25, 2021 | Hats, shirts, and sweatshirts |
| LES PAUL® Word Mark | 1539282–May 16, 1989* | Stringed instruments, namely, guitars and basses |
| Les Paul Body Design®  | 1782606– July 20, 1993* | Guitars |
| Les Paul Body Design®  | 6269872– February 16, 2021 | Pens, posters, and stickers |
| Flying V Body Design® | 2051790– April 15, 1997* | Stringed instruments, namely guitars |

| | | |
|---|---|---|
|  | | |
| Flying V Body Design® | 6269870– February 16, 2021 | Hats, shirts, sweatshirts |
|  | | |
| Flying V Peghead Design® | 3976202-June 7, 2011 (Supplemental Register) | Stringed instruments, namely guitars and electric guitars |
|  | | |
| FLYING V® Word Mark | 1216644–November 16, 1982* | Guitars |
| ES Body Design® | 2007277– October 8, 1996 (Supplemental Register) | Stringed instruments, namely guitars |

| | | |
|---|---|---|
|  | | |
| ES Body Design® | 6351671– May 18, 2021 | Shirts, sweatshirts |
|  | | |
| Explorer Body Design® | 2053805–April 22, 1997* | Stringed instruments, namely guitars |
|  | | |
| SG Body Design® | 2215791–January 5, 1999* | Stringed instruments, namely guitars |

| | | |
|---|---|---|
| Firebird Body Design® | 4107670–March 6, 2012* | Bass guitars, electric bass guitars, electric guitars, and guitars |
| FIREBIRD® Word Mark | 5628009–December 11, 2018 | Electric guitars |
| GIBSON FIREBIRD® Word Mark | 4006293-August 2, 2011* | Electric guitars |
| Bell Shaped Truss Rod Cover Design® | 1022637–October 14, 1975* | String instruments |
| Epiphone Mustache Peg Head Design® | 2367539-July 18, 2000* | Stringed musical instruments, namely guitars |

| | | |
|---|---|---|
|  | | |
| ES® Word Mark | 2599297–July 23, 2002* | Stringed musical instruments, namely guitars |
| SG® Word Mark | 3931128–March 15, 2011* | Bass guitars, electric bass guitars, electric guitars, guitars |
| Split Pineapple Inlay Design® | 100879–April 15, 1975* | String instruments |
|  | | |
| Split Diamond Inlay Design® | 1008799–April 15, 1975* | String instruments |
|  | | |
| Explorer Headstock Design® | 1567052–November 21, 1989* | Stringed instruments, namely guitars and basses |
|  | | |
| EXPLORER® Word Mark | 2641548– October 29, 2002* | Stringed musical instruments, namely |

| | | guitars |
|---|---|---|
| J-200® Word Mark | 3863734–October 19, 2010* | Stringed musical instruments, namely, guitars |
| J-200 Pick Guard Design® | 3892470–December 21, 2010* | Stringed musical instruments, namely, guitars |
| Mustache Bridge Design® | 1911282–August 15, 1995* | Stringed instruments, namely, guitars |
| Hummingbird Pick Guard Design® | 3889103–December 14, 2012* | Stringed musical instruments, namely, guitars |
| HUMMINGBIRD® Word Mark | 1931670–October 31, 1995* | Stringed musical instruments, namely guitars |

| | | |
|---|---|---|
| Moderne Body Design®  | 3607851–April 14, 2009* | Guitars |
| MODERNE® Word Trademark | 3588609–March 10, 2009* | Musical instruments |
| Gibson Pure (Stylized) Design®  | 2738824–July 15, 2003* | Musical instruments, namely guitars, basses, and parts and accessories for musical instruments, namely guitar strings and pickups |
| Fern Headstock Design®  | 4706482–March 24, 2015* | Stringed musical instruments |
| Firebird Logo®  | 6862452–October 4, 2022 | Musical instruments, namely, guitars and basses |

\* These marks are incontestable pursuant to 15 U.S. § 1065.

35.    The federal registrations listed above are prima facie evidence of Gibson's ownership and the validity of the above registered trademarks.  Further, many of these registrations are incontestable, and therefore constitute conclusive evidence of Gibson's exclusive rights to those marks for the products and/or services specified in those registrations pursuant to 15 U.S.C. §§ 1065 and 1115(b).

Based on Gibson's longstanding and extensive use of the Gibson Marks, and the widespread advertising, publicity, promotion, and substantial sales of products and services under the Gibson Marks, these marks have been well known and famous to the general public for many years.

### Misuse By Society6 of The Gibson Marks

### Society6's Business Model

36.    Upon information and belief, Defendant Society6 is a service provider and fulfillment services platform that markets, promotes, advertises, and sells apparel, including t-shirts, sweatshirts, hoodies, and other products on its Website.  Society6's online services provided on Society6's Website include an online retail marketplace where consumers may purchase the products advertised on that site.  Society6's website also provides an online platform where individuals or businesses may open an "artist" account and "create" new products to advertise and allow Society6 to sell on its Website, and where they may advertise and sell products created by others that are already offered on Society6's Website.  Upon information and belief, when consumers purchase products on Society6's Website, Society6 handles all aspects of the order, including providing the products (e.g. blank tee-shirts, coffee mugs, and other items), authoring the product listing, processing the payment transaction, printing the product, shipping the product, providing customer support, and handling returns and exchanges.   Society6 sets the base price for the product and allows artists to set a "markup" on the product.  Upon information and belief, the product is sold

for the base price plus the markup price, and Society6 receives the base price amount while the artist receives the markup amount.

37.     Society6's artists "create" products by selecting "blank" products (e.g., a t-shirt bearing no images, designs, or text) made available by Society6 and then adding the "design" to be printed on such products.   Society6 then advertises and offers products bearing the designs on Society6's Website.   For example, an individual or business may open an account on Society6's Website, select a plain or blank t-shirt from Society6's list of available products, and add an image of Gibson's famous Dove Wing Headstock Shape Design® Trademark in just a few minutes.   The resulting product, a Gibson Dove Wing Headstock Shape Design® t-shirt, is then advertised and sold on Society6's Website. For example, included below is a screenshot of a design by Society6 artist, "jul03," making unauthorized use of Gibson's Marks and the Society6 products upon which a shopper can order the design:





38.     Society6's artists are essentially anonymous because they are identified on Society6's Website only by invented account names and/or numerical codes that do not reveal the artists' true names or contact information.

39.     Society6's contract with artists allows Society6 to keep artists' commissions for itself under certain circumstances, including for sales of products that are the subject of infringement complaints by rights holders.

40.     In addition to advertising products directly through Society6's Website, Society6 facilitates the advertisement and promotion of such products through its email campaigns, on social media sites (e.g., Facebook and Instagram), and through Google Ads. Further, Society6 encourages

artists to promote their products by providing sales tracking tools to its artists and offers tutorials for the marketing of such products on social media.

41.     Society6 prints, produces, and/or manufactures, or arranges to have printed, produced, and/or manufactured, products sold on Society6's Website to customers who purchase products on Society6's Website.

42.     Society6 ships, or arranges to have shipped, products sold on Society6's Website to customers who purchase products on Society6's Website.

43.     Society6 is thus not a passive participant in the business conducted by artists on and through Society6's Website.  This is not a situation where Society6's only role is to provide artists with access to an online marketplace to sell their products and everything is done by the artists. Rather, Society6 is an active partner of the artists and directly involved in the artists' business in many ways, all for Society6's financial gain, including: (a) Society6 provides the "blank" products upon which artists' designs are printed and sold; (b) Society6 handles the payment transactions for the sales of all products sold on Society6's Website; (c) Society6 prints or arranges for the printing of all products sold on Society6's Website; (c) Society6 ships or arranges for the shipping of all products sold on Society6's Website; and (d) Society6 provides to artists sales tracking tools and tutorials for social media marketing of the products. Furthermore, Society6 benefits specifically from artists' use of unauthorized Gibson Marks in their designs because they are highly sought after by enthusiastic consumers, are likely to drive traffic to Society6's website, and are likely to bring awareness of Society6's business to those consumers.

**Society6's Repeated Infringement of the Gibson Marks**

44.     Society6 has advertised, promoted, and sold hundreds, if not thousands, of products bearing the Gibson Marks (as defined above, the "Infringing Products").  On November 18, 2022, Gibson sent Society6 a cease and desist letter informing Society6 of Gibson's ownership of and

rights to Gibson's Marks and identifying over 500 product listings on Society6's website making unauthorized use of those Marks.  A true and correct copy of Gibson's November 18, 2022 cease and desist letter is attached hereto as Exhibit "**A**." Attached hereto as Exhibit "**B**" is a true and correct copy of examples of infringing products Gibson attached as an exhibit to its November 18, 2022 cease and desist letter, and Exhibit "**C**" is a true and correct copy of a spreadsheet listing over 500 links to infringing products Gibson attached as an exhibit to its November 18, 2022 cease and desist letter.

45.     On November 22, 2022, Society6 confirmed receipt of Gibson's November 18, 2022 cease and desist letter, but it stated that it would not address Gibson's objections until after the holidays (it is unclear whether Society6 was referring to the Thanksgiving holiday or all of the end-of-year holidays).

46.     As of the date of this Complaint, Society6 has not removed the infringing products referenced in Gibson's November 18, 2022 cease and desist letter or removed the violating artist accounts, conveniently keeping those infringing products active during its "Black Friday" and "Cyber Monday" sales events—two of the biggest shopping days of the year in the United States, particularly for online sales.

47.     Additionally, Gibson has sent numerous takedown requests notifying Society6 of infringing artist accounts selling t-shirts and sticker products bearing Gibson Marks:

| Date Takedown Letter Sent from Gibson to Society6 | "Artist" Account Name Reported | Number of Infringing T-Shirt or Sticker Products Reported |
|---|---|---|
| 11/18/2022 | Crabbitcreations | 6 |
| 11/18/2022 | Design & Art | 2 |
| 11/18/2022 | PhantomLiving | 23 |
| 11/21/2022 | Nuthon Design | 1 |
| 11/21/2022 | Jul03 | 2 |
| 11/21/2022 | ChimpDeluxe | 12 |
| 11/28/2022 | Zapista | 3 |
| 11/28/2022 | HomeStead Digital | 16 |

| 11/28/2022 | Good Music | 7 |
| 11/29/2022 | PhantomLiving | 47 |

As of the date of this complaint, Society6 has not responded to these takedown requests, removed the infringing products, or suspended the named artist accounts.

48.     Society6 has profited handsomely from sales of Infringing Products by receiving a percentage of the retail sales price of each Infringing Product.

49.     The Infringing Products sold on Society6's Website have been designed and/or offered by numerous artists that are anonymous as expressly allowed under Society6's Website.  The anonymity provided by Society6 to its artists is a direct avenue for artists to offer numerous Infringing Products with near impunity.  Society6 thus facilitates the widespread proliferation and offering of such Infringing Products which are undoubtedly commercially successful given the high popularity and commercial success of Gibson's own products bearing the Gibson Marks, including clothing, posters, and decals.  Indeed, as described above, one of the few potential repercussions for artists that offer Infringing Products is the withholding of artists' commissions by Society6 for its own gain and/or purpose.  Society6 is thus further incentivized to allow its anonymous artists to offer Infringing Products.

50.     As of the filing of this complaint, Society6 has not removed any of the infringing content reported in Gibson's November 18, 2022 cease and desist letter or its subsequent takedown requests, and Society6's infringement report process and remedy are wholly inadequate to stop Society6's continuing and expanding violations of Gibson's Marks.

51.     Society6's removal of the sales page does not stop Society6 from continuing to distribute such Infringing Products by fulfilling existing orders for such Infringing Products and continuing to profit off of such products.  In fact, Society6's contract with its artists expressly permits it keep all proceeds from products that are the subject of infringement complaints. Even

where Society6 removes some Infringing Products, Society6 still allows its artists to create new products or accounts advertising and offering new Infringing Products bearing the same Gibson Marks or even the same infringing designs that Society6 previously acknowledged and removed in its responses to Gibson's prior complaints.

52.     Despite Gibson's numerous and repeated complaints and Society6's actual knowledge of Gibson's rights, Society6 continues to this day to advertise, offer, sell, and profit from numerous Infringing Products bearing the Gibson Marks on Society6's Website.

53.     Specifically, despite Gibson's objections: (a) Society6 continues to advertise and sell those Infringing Products bearing specific Gibson Marks cited in Gibson's prior objections; (b) Society6 continues to allow the same anonymous artists that are repeat infringers of Gibson's Marks and identified in Gibson's prior objections to offer numerous additional Infringing Products on Society6's Website; and (c) Society6 even continues to advertise and sell numerous Infringing Products bearing designs identical to designs of Infringing Products that were the subject of Gibson's prior objections.

54.     Society6 continues to advertise and sell numerous Infringing Products bearing specific Gibson Marks cited in Gibson's objections.   Below are representative examples of Infringing Products that Society6 offered in November 2022 bearing the identical Gibson Marks cited in Gibson's numerous prior objections.



*See* Exhibit B at 492 (showing numerous Gibson Marks including its Flying V body shape®, Explorer body shape®, Les Paul body shape®, SG body shape®, GIBSON® word mark, and more) (also available at https://society6.com/product/you-can-never-have-too-many-guitars-umn_t-shirt?sku=s6-2127692p15a4v75a5v18a11v49a312v1096) (last accessed Nov. 29, 2022).



*See* Exhibit B at 65 (showing numerous Gibson Marks including its ES body shape, GIBSON® word mark, Dove Wing Peghead design®, Bell Shaped Truss Rod Cover design®, ES word mark®, and Split Diamond Inlay Design®) (also available at https://society6.com/product/double-black-gibson-es-345_wood-wall-art?sku=s6-3332260p67a214v757) (last accessed Nov. 29, 2022).

55.     Society6 also continues to allow the same anonymous artists that are repeat infringers of Gibson's intellectual property and that were identified in Gibson's prior objections to offer and sell numerous Infringing Products on Society6's Website.  For example, the artist "Phantom Living" has multiple Infringing Products identified in Gibson's objections, and this artist continues to this day to create and sell numerous Infringing Products on Society6's Website despite having numerous products included in Gibson's complaints, including the representative examples shown below:



*See* Phantom Living's artist page on Society6 at https://society6.com/phantomliving?page=1 (last accessed Nov. 29, 2022).

56.     Defendant's continued marketing, advertising, promotion, and sale of numerous Infringing Products demonstrate that Defendant willfully intended to trade upon the goodwill of Gibson and the Gibson Marks and/or recklessly disregarded Gibson's rights.

57.     Defendant's actions described above are and have been intended to mislead consumers into believing that Defendant and/or its products are authorized by Gibson, connected to Gibson, and/or licensed, affiliated with, and/or sponsored by Gibson, when in fact they are not.

58.     Gibson has obtained an Infringing Product through a test purchase. Gibson obtained the test purchase after a cursory search of "Gibson Guitar" on Society6's website.  A screenshot of the test purchase's product listing is shown below:



Available        at        https://society6.com/product/you-can-never-have-too-many-guitars-ydg_t-shirt?sku=s6-2125992p15a4v104a5v20a11v49a312v1096 (last accessed Nov. 29, 2022).

59.     Society6 processed Gibson's payment for the test product and updated Gibson with shipping and order status updates.

60.     The test product was delivered in Society6-branded packaging, including Society6's logo and the slogan, "Designed by artists, Made by us, Just for you." Included within the package was a Society6 sticker and a Society6 flyer. The package listed Society6 as the return address recipient and included the following as the return address: 1655 26th Street, Santa Monica, CA 90404.  From the purchase of the product to the delivery and customer service options offered after delivery, all communication came from Society6 rather than the artist that designed the infringing test product.

61.     Below is an image of the Infringing Product in the form of a t-shirt obtained in the test purchase from Society6.  As illustrated below, the printed image appears to be crooked, demonstrating lack of quality control that further tarnishes and damages Gibson's brand when Gibson's Marks are used without authorization on such products.



62.     Additionally, Society6's Website advertises the t-shirts as "Society6 t-shirts", as illustrated in the block of text included on an Infringing Product's page:

---

ⓘ **About Society6 T Shirts**  ⌃

Our boxy tees provide a classic, timeless style coupled with your favorite designs. Unisex sizing with an oversized relax fit. Featuring a ribbed knit collar, double-needle stitched sleeves, and bottom hem for durability, this tee will easily be your new favorite. Made from 100% USA cotton, these heavyweight tees are ultra soft, with an attention to detail to ensure they retain their shape and give you the most longevity.

Society6 also provides this general description of Society6 t-shirts on its website:

**Overview**

Browse our selection of T Shirts and find the perfect design for you—created by our community of independent artists.

Inspired by our artist community, our graphic t-shirts are next level. Looking for laughs? Check out our funny t-shirts. Into throwbacks? Maybe a retro t-shirt from our vintage collection is more your jam. Need inspiration? Say no more with our typography graphic tees selection. Whatever you're looking for, whether it's a pattern, animal, music and more—we got it. All of our unisex t-shirts come in a variety of colors, each with four print options and come in any size ranging from S to XXL, making it the perfect fit for everyone. The best part? They're printed as soon as you hit order.

**Details**

- T-Shirts are 100% Cotton
- Superior Airlume combed and ring-spun cotton for comfort
- Printed using non toxic materials
- Unisex sizing
- 100% sweatshop free and eco-friendly
- WRAP Certified

Society6's use of its own marks and branding on the product listing, the communications following the purchase, and the packaging of infringing products bearing the Gibson Marks suggests that there is a co-branding or licensing relationship between Gibson and Society6 when there is not.

<u>**Secondary Liability of Society6**</u>

63.     Upon information and belief, Defendant Society6 uses its online platform to sell Infringing Products for its artists. Society6 authors the Infringing Product listings, provides the "blank" products upon which the artist designs are printed, and makes representations on the product listings and on its website regarding the attributes and qualities of those products.

64.     Society6 sets the base price for the product and then allows the artist to set a markup for the product.  Society6 keeps the artists markup on products that Society6 finds infringe on others' intellectual property.

65.     In addition, Society6 handles the payment transactions for the sales of all products sold on Society6's Website; (b) Society6 prints or arranges for the printing of all products sold on Society6's Website; (c) Society6 ships or arranges for the shipping of all products sold on Society6's Website; and (d) Society6 provides to artists sales tracking tools and tutorials for social media marketing of the products. Lastly, Society6 communicates with the consumers, provides customer support, and handles all returns and exchanges for customers.

66.     Upon information and belief, Society6 has the complete power to control and direct the artists' actions.

67.     Upon information and belief, Society6 has apparent or actual partnership in which Defendant Society6 is able to exercise substantial and direct control over the distribution and sale of the artists' Infringing Products containing the Gibson Marks.

68.     Upon information and belief, Society6 controls, among other things, which products the artists can use the Gibson Marks on and product approval for all artists' products using the Gibson Marks.

69.     Upon information and belief, Society6 has constructive knowledge that the artists' Infringing Products were infringing the Gibson Marks. The Gibson Marks are all registered in the United States.

70.     Upon information and belief, Society6 has actual knowledge of the artists' infringement of the Gibson Marks by the Infringing Products.  Gibson contacted Society6 in November 2022 to inform Society6 of the infringement of the Gibson Marks and included links to over 500 infringing product listings on Society6's website.

71.     Despite its constructive and actual knowledge of the infringement of the Gibson Marks by the Infringing Products, Society6 has continued to provide its services to the artists for use with the Infringing Products.

72.     Furthermore, Society6 has failed to remove infringing products identified by Gibson in its complaints to Society6.

73.     Upon information and belief, Society6 intentionally induced the artists to infringe on the Gibson Marks by controlling and approving products that infringe on the Gibson Marks and obtaining fees for such infringement.

74.     Upon information and belief, the aforementioned misuse of the Gibson Marks by Society6 was done with the intent of deceiving or misleading customers into mistakenly believing that said Infringing Products were authorized Gibson products originating from Gibson or its related companies and otherwise misappropriating the goodwill built by Gibson in the Gibson Marks and otherwise attracting and misdirecting consumers looking for genuine or authorized Gibson goods to Society6's Website.

**Injury to Gibson and the Public**

75.     Defendant's actions described above have damaged and irreparably injured and, if permitted to continue, will further damage and injure Gibson, Gibson's Marks, Gibson's reputation and goodwill associated with the Gibson Marks, Gibson's reputation for high-quality products and services, and the public interest in consumers being free from confusion.

76.     Defendant's actions as described above have caused and are likely to continue to cause confusion, mistake, and deception as to the source or origin of the Infringing Products and have falsely suggested and are likely to continue to falsely suggest a sponsorship, connection, license, affiliation, or association between Defendant and/or the Infringing Products with Gibson, Gibson's Marks, and/or Gibson's products and services.

77.   Defendant's actions described above are likely to dilute the distinctiveness of the famous Gibson Marks and are also likely to tarnish those famous marks, thereby injuring Gibson.

78.   Gibson has no adequate remedy at law.

79.   Upon information and belief, Does 1 through 10 are fictitiously named Defendant that advertises and sells the Defendant Society6's Infringing Products bearing the Gibson Marks and causes damage to the Plaintiff as herein alleged.

80.   Defendant knew or should have known that its activities described above constituted trademark infringement, trademark counterfeiting, trademark dilution, and unfair competition, and thus Defendant acted knowingly and willfully in reckless disregard of Gibson's intellectual property.

81.   Prior to commencing this lawsuit, Gibson and its representatives communicated directly with Society6's counsel in an attempt to resolve this matter without the necessity of bringing this lawsuit, but Society6 has failed to cease all unauthorized use of the Gibson Marks as requested by Gibson and continues to deliberately and intentionally use the Gibson Marks without the consent of Gibson.

## COUNT I
### Trademark Infringement Under The United States Trademark Act (15 U.S.C. 1114 (1)) by Society6

82.   Gibson repeats the allegations set forth in Paragraphs 1 through 81, as if fully set forth herein.

83.   Society6's use of a reproduction, counterfeit, copy, or colorable imitation of the famous Gibson Marks, without Gibson's consent, in commerce in connection with the sale, offering for sale, distribution, or advertising of their products or services is likely to cause confusion, or to cause mistake, or to deceive the public, and thus constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

84.     The complained of acts constitute willful, deliberate, and intentional infringement of Gibson's federally registered trademarks for the Gibson Marks in violation of §32(1) of the Lanham Act (15 U.S.C. §1114(1)).

85.     Society6's intentional and willful infringement of the Gibson Marks has caused, and will continue to cause, damage to Gibson and is causing irreparable harm to Gibson for which there is no adequate remedy at law.   Society6 is directly liable for these actions.

### COUNT II
### Trademark Counterfeiting Under The United States Trademark
### Act (15 U.S.C. 1114(1)) by Society6

86.     Gibson repeats the allegations set forth in Paragraphs 1 through 85, as if fully set forth herein.

87.     Upon information and belief, Society6 intentionally and willfully used, without Gibson's consent, counterfeit versions of the registered Gibson's Marks in commerce, knowing that the marks were counterfeit.  Society6 used the counterfeit marks in connection with the sale, offering for sale, or distribution of their goods and services, which is likely to cause confusion, or cause mistake, or deceive the public.  The following Gibson Marks are registered on the Principal Register and subject to Gibson's counterfeiting claim: GIBSON® Word Trademark (U.S. Reg. No. 1545311; U.S. Reg. No. 5551068), EPIPHONE® Word Trademark (U.S. Reg. No. 1957393; U.S. Reg. No. 5419164), MAESTRO® Word Trademark (U.S. Reg. No. 3165811), Maestro (Stylized) Design® Trademark (U.S. Reg. No. 2624578), the Gibson (Stylized) Design® Trademark (U.S. Reg. No. 0510594; U.S. Reg. No. 0866698; U.S. Reg. No. 0989617; U.S. Reg. No. 5384494), Gibson with Star Design® Trademark (U.S. Reg. No. 4301646), the Epiphone (Stylized) Design® Trademark (U.S. Reg. Nos. 0964189 and 4129178), KRAMER® Word Mark (U.S. Reg. No. 1888387), the GIBSON GIVES® Word Trademark (U.S. Reg. No. 6356856), Dove Wing Peghead Design® Trademark (U.S. Reg. No. 1020485; U.S. Reg. No. 6359307), LES PAUL® Word Mark (U.S. Reg. No. 1539282), Les

Paul Body Design® Trademark (U.S. Reg. No. 1782606; U.S. Reg. No. 6269872), Flying V Body Design® Trademark (U.S. Reg. No. 2051790; U.S. Reg. No. 6269870), FLYING V® Word Mark (U.S. Reg. No. 1216644), ES Body Design® Trademark (U.S. Reg. No. 6351671), Explorer Body Design® Trademark (U.S. Reg. No. 2053805), SG Body Design® Trademark (U.S. Reg. No. 2215791), Firebird Body Design® Trademark (U.S. Reg. No. 4107670), FIREBIRD® Word Trademark (U.S. Reg. No. 5628009; U.S. Reg. No. 4006293), Bell Shaped Truss Rod Cover Design® Trademark (U.S. Reg. No. 1022637), Epiphone Mustache Peg Head Design® Trademark (U.S. Reg. No. 2367539), ES® Word Trademark (U.S. Reg. No. 2599297), SG® Word Trademark (U.S. Reg. No. 3931128), Split Pineapple Inlay Design® Trademark (U.S. Reg. No. 1008798), Split Diamond Inlay Design® Trademark (U.S. Reg. No. 1008799), Explorer Headstock Design® Trademark (U.S. Reg. Nos. 1567052 and 1934543), EXPLORER® Word Trademark (U.S. Reg. No. 2641548), the J-200® Word Trademark (U.S. Reg. No. 3863734), J-200 Pick Guard Design® Trademark (U.S. Reg. No. 3892470), Mustache Bridge Design® Trademark (U.S. Reg. No. 1911282), Hummingbird Pick Guard Design® Trademark (U.S. Reg. No. 3889103), HUMMINGBIRD® Word Trademark (U.S. Reg. No. 1931670), MODERNE® Word Trademark (U.S. Reg. No. 3588609), Gibson Pure (Stylized) Design® Trademark (U.S. Reg. No. 2738824), Fern Headstock Design® Trademark (U.S. Reg. No. 4706482), Firebird Logo® Trademark (U.S. Reg. No. 6862452) (collectively "Gibson Principal Marks").

88.    Society6 uses the counterfeit marks on the identical goods the Gibson Marks are registered for.

89.    The complained of acts constitute trademark counterfeiting in violation of Section 32(1) of the Lanham Act (15 U.S.C. §1114(1)).

## COUNT III
### False Designation of Origin, Passing Off, and Unfair Competition Under The United States Trademark Act (15 U.S.C. 1125(a)) by Society6

90.     Gibson repeats the allegations set forth in Paragraphs 1 through 89, as if fully set forth herein.

91.     Society6's use of the Gibson Marks, without Gibson's consent, in commerce to promote, market, or sell their products or services in direct competition with Gibson's products and services constitutes False Designation of Origin and Unfair Competition pursuant to 15 U.S.C. § 1125(a). Society6's use of the Gibson Marks is a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact, which is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of Society6 with Gibson and/or as to the origin, sponsorship, or approval of Society6's products and commercial activities with Gibson.

92.     The complained of acts constitute willful, deliberate, and intentional false designations of origin as to products made available by Society6 and unfair competition in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)).

93.     Society6's wrongful activities have caused—and unless enjoined by this Court—will continue to cause irreparable injury and other damages to Gibson's business and reputation and will continue to cause damage to the goodwill it has developed in the Gibson Marks. Gibson has no adequate remedy at law.

## COUNT IV
### Trademark Dilution Under The United States Trademark Act (15 U.S.C. 1125(c)) by Society6

94.     Gibson repeats the allegations set forth in Paragraphs 1 through 93, as if fully set forth herein.

95.     Society6's unauthorized use of the famous Gibson Marks is likely to dilute and blur the distinctive quality of this mark and to tarnish the Gibson Marks.

96.     The complained of acts have diluted and damaged the distinctive quality of the Gibson Marks and constitute trademark dilution of the famous marks in violation of §43(c) of the Lanham Act (15 U.S.C. §1125(c)).

97.     Upon information and belief, Society6 willfully intended to trade on Gibson's reputation and/or cause dilution and tarnishment of the famous Gibson Marks.

## COUNT V
**Intentional Interference With Economic Advantage in Violation of Texas Common Law by Society6**

98.     Gibson repeats the allegations set forth in Paragraphs 1 through 97, as if fully set forth herein.

99.     Gibson has for years entered into contracts with others and has reasonably expected to continue to enter into contracts licensing the Gibson Marks to various entities for use with guitars, toys, jewelry, clothing, and other goods.

100.    Society6 has known that the Gibson Marks are highly desirable property to Gibson, other guitar manufacturers, and companies engaging in the sale of clothing, guitar accessories, memorabilia, and other collectable goods. Additionally, Society6 has known of Gibson's desire and intent to license the valuable Gibson Marks to existing and potential clients for use with guitars and other goods.

101.    Having seen that Society6 misappropriated the Gibson Marks for its own gain, without Gibson's permission and without any compensation to Gibson, other companies now do not feel it necessary to enter into or continue with licensing agreements with Gibson for the use of the Gibson Marks.

102.    Absent Society6's infringing conduct, it is reasonably certain that Gibson would have continued to license its Gibson Marks to existing and prospective clients.

103.    Society6's conduct has caused Gibson substantial harm and damages because Gibson is unable to fully commercialize on the licensing of the Gibson Marks to various companies engaged in the sale of clothing, guitar accessories, memorabilia, and other collectable goods.

104.    The complained of acts constitute intentional interference with economic advantage in violation of the common law of the State of Texas.

## COUNT VI
## Trademark Dilution Under Tex. Bus. & Comm. Code (Section 16.103) by Society6

105.    Gibson repeats the allegations set forth in Paragraphs 1 through 104, as if fully set forth herein.

106.    Through Gibson's long-standing and extensive use, and the consumer recognition, the Gibson Marks are famous.

107.    Society6's adoption and use of the Gibson Marks have caused and are likely to cause dilution by blurring and weakening of the Gibson Marks.

108.    Society6's willful intent to trade on the Gibson Marks on its Infringing Products threatens to harm the reputation of the famous Gibson Marks.

109.    As a direct and proximate result of Society6's actions, Gibson has suffered and will continue to suffer damages, including damage to its goodwill and reputation.

110.    The complained of acts are likely to cause injury to the business reputation of, or otherwise dilute, the distinctive quality of the Gibson Marks in violation of § 16.103 of the Texas Business and Commerce Code.

**COUNT VII**
**Trademark Infringement in Violation of Texas Common Law by Society6**

111.     Gibson repeats the allegations set forth in Paragraphs 1 through 110, as if fully set forth herein.

112.     Gibson has a valid, legally protectable interest in the Gibson Marks.

113.     Society6 used the Gibson Marks in commerce to identify its own goods.

114.     Society6 did not have Gibson's consent, permission, or license to use the Gibson Marks.

115.     Society6 used the Gibson Marks with the intent to confuse consumers regarding the origins of Society6's goods.

116.     Society6's use of the Gibson Marks has caused consumer confusion, and will continue to cause confusion, regarding the origins of Society6's products and has diminished Gibson's goodwill and ability to control the goods sold under the Gibson Marks.

117.     The complained of acts constitute trademark infringement in violation of the common law of the State of Texas.

118.     Society6's acts have caused, and will continue to cause, Gibson to suffer damages.

**COUNT VIII**
**Unfair Competition in Violation of Texas Common Law by Society6**

119.     Gibson repeats the allegations set forth in Paragraphs 1 through 118, as if fully set forth herein.

120.     Through Society6's use of the Gibson Marks in connection with its Infringing Products, Society6 is passing off its goods as those of Gibson's in a manner that is false, misleading, and misrepresentative of the nature, characteristics, and quality of Gibson's goods.

121.     Society6 misappropriated the Gibson Marks, in which Gibson created through extensive resources, with the intent to free ride off of Gibson's goodwill and engage in direct competition with Gibson.

122.     As a direct and proximate result of Society6's actions, Gibson has suffered and will continue to suffer damages, including irreparable damage to its goodwill and reputation.

123.     The complained of acts constitute unlawful acts of unfair competition and unlawful, unfair and fraudulent business practices in violation of the common law of the State of Texas.

### COUNT IX
### False Designation of Origin in Violation of Texas Common Law by Society6

124.     Gibson repeats the allegations set forth in Paragraphs 1 through 123, as if fully set forth herein.

125.     Through Society6's use of the Gibson Marks in interstate commerce in connection with its Infringing Products, Society6 has falsely designated those goods as affiliated with Gibson.

126.     Society6's use of the Gibson Marks has the capacity to materially deceive potential consumers, and is likely to cause confusion, or to cause mistake, or to deceive as to the origin of Society6's products and/or serviced.

127.     As a result of Society6's false designation of its products and services, Gibson has suffered, and will continue to suffer damages, including irreparable damage to its goodwill and reputation.

### COUNT X
### Unjust Enrichment in Violation of Texas Common Law by Society6

128.     Gibson repeats the allegations set forth in Paragraphs 1 through 127 as if fully set forth herein.

129.     Through Society6's use of the Gibson Marks, Society6 has used the significant goodwill and consumer recognition inherent in the Gibson Marks to gain business and compete directly with Gibson for potential customers.

130.     Through Society6's use of the Gibson Marks, Society6's marketing efforts have benefited and Society6 has profited financially, and is likely to continue benefiting and profiting, by leading customers to believe that Society6's Infringing Products are affiliated with Gibson.

131.     As a direct and proximate result of Society6's actions, Gibson has suffered and will continue to suffer damages, including irreparable damage to its goodwill and reputation.

## COUNT XI
## Contributory Trademark Infringement Under Federal Law by Society6

132.     Gibson repeats the allegations set forth in Paragraphs 1 through 131, as if fully set forth herein.

133.     Gibson is informed and believes, that Defendant Society6 has without permission, authority, or license from Gibson, participated in or otherwise knowingly contributed to the affixation, application and/or use by their clients/customers and others in connection with the advertisement, display, promotion, marketing, distribution, publication, provision, offering for sale and/or sale of goods, of false descriptions and representations, including words and designs which tend to falsely describe or represent such goods as Gibson's, and/or affiliated with Gibson or alternatively, which tend to describe or represent the Gibson Marks as affiliated with Defendant Society6, and has participated in or otherwise knowingly contributed to causing such goods and services to enter into interstate commerce with full knowledge of the falsity of such designations of origin, and such descriptions and representations, all to the detriment of Gibson.   Defendant Society6's participation in, or otherwise knowing, contribution to the advertisement, display, promotion, marketing, distribution, publication, provision, offering for sale and/or sale of goods

incorporating unauthorized use of the Gibson Marks constitutes false descriptions and representations tending falsely to describe or represent the Infringing Products.

134.   Defendant Society6's contributory conduct in connection with its clients/customers and others' respective unauthorized and unlawful acts of unfair competition, and each of them, have enabled, assisted, aided and abetted their clients/customers and others to trade unlawfully upon the established goodwill and reputation of Gibson and its licensees.   Defendant Society6 is thereby unjustly enriching itself at the expense and to the damage and injury to Gibson, and unless enjoined by this Court, will further impair the value of the Gibson Marks.   By reason of the aforesaid, the continued use by Defendant Society6 and their customers/clients of the Gibson Marks, or the likeness thereof, has caused, and unless restrained will continue to cause, serious irreparable injury to Gibson.

135.   Gibson has no adequate remedy at law and has suffered, and is continuing to suffer, harm and damage as a result of Society6's acts of contributory unfair competition in amounts within the jurisdiction of this Court, thus far not determined.

136.   Defendant has been notified of its infringing and illegal activity.   Despite clear requests to Defendant Society6, Gibson is informed and believes, and upon that basis alleges, that Defendant Society6 has willfully and knowingly continued its wrongful conduct in violation of Gibson's rights through the date of the filing of this Complaint.

137.   Defendant Society6's complete control of the artists' actions, combined with actual notice of the infringement of the Gibson Marks constitute contributory trademark infringement in violation of federal law.

## COUNT XII
### Vicarious Liability for Trademark Infringement by Society6

138.   Gibson repeats the allegations set forth in Paragraphs 1 through 137, as if fully set forth herein.

139.    Upon information and belief, there is an apparent or actual partnership between Defendant Society6 and its artists in which Defendant Society6 is able to exercise substantial or complete control over the distribution and sale of the Infringing Goods containing the Gibson Marks through its artist contract.

140.    Upon information and belief, the artist contract gives Society6 substantial or complete control of any artist product containing the Gibson Marks, including the Infringing Products.

141.    The above subjects Society6 to vicarious liability through the direct trademark infringement of the Gibson Marks by the Infringing Products.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gibson Brands, Inc. prays for judgment as follows:

1.    That judgment be entered in favor of Plaintiff on all causes of action set forth herein.

2.    That in accordance with Section 35 of the Lanham Act (15 U.S.C. §1117), Plaintiff be awarded monetary damages sufficient to recover: (1) Defendant's profits on Defendant Society6's Infringing Products; (2) all damage suffered by Plaintiff; and (3) the costs of this action and that said amount be trebled or otherwise multiplied to the extent permitted by statute.  In addition, Plaintiff reserves the right to elect statutory damages up to and including $2,000,000 per counterfeit mark pursuant to 15 U.S.C. §1117(c).

3.    That Plaintiff be awarded such other monetary damages, recovery, and awards as appropriate under the law.

4.    That Defendant, its officers, directors, principals, agents, servants, affiliates, employees, attorneys, representatives, successors and assigns, and all those in privity or acting in concert or participation with Defendant, and each and all of them, be preliminarily and permanently enjoined and restricted from directly or indirectly:

(a)     claiming or representing that any products and/or services sold by Society6 are made directly by Gibson pursuant to Gibson's strict quality control standards or Gibson has authorized, licensed, or sponsored the use by Society6 of the Gibson Marks for those products;

(b)     using, in any manner, or holding itself out as having rights to use the Gibson Marks, or any other name, mark or design confusingly similar to the Gibson Marks to designate, describe or refer to themselves or in conjunction with any product or service, including any use in conjunction with any Internet activities conducted by it or on its behalf such as any use as a domain name or in the text, graphics and hypertext metatags of any Internet website;

(c)     requesting or inducing Internet search engines to display links to the Society6's Website or other websites displaying or promoting Defendant's products or services when potential customers using those search engines search for terms containing variations of the Gibson Marks;

(d)     selling, offering for sale, promoting, advertising, distributing or providing or offering to provide any goods or services in conjunction with the Gibson Marks or any other name, mark or design confusingly similar to the Gibson Marks in conjunction with any product or service; and

(e)     engaging in any course of conduct likely to cause confusion, deception or mistake or injure Plaintiff's business reputation or dilute the Gibson Marks or appropriate the goodwill and reputation of said marks or lead to the passing off of Society6's products and services as Gibson products and services.

5.     That the Court issue an Order directing Defendant to file with the Court and serve on Plaintiff, within thirty (30) days after the service on Defendant of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction.

6.      That the Court award judgment in favor of the Plaintiff in the amount of treble damages.

7.      That the Court award to Plaintiff punitive damages sufficient to deter Defendant from committing such willful acts of infringement in the future.

8.      That the Court requires a full and complete accounting of all monies received by Defendant as a result of the infringement.

9.      That Defendant be required to deliver to Plaintiff all merchandise, packaging, labels, boxes, cartons, advertising, brochures, documents, advertising and promotional materials and other things, possessed, used or distributed by Defendant, or on their behalf, which use the Marks or any other name, mark or design confusingly similar to the Gibson Marks.

10.     That Plaintiff be awarded the costs of this action and its disbursements, and reasonable attorneys' and investigatory fees incurred, and as otherwise appropriate herein, pursuant to 15 U.S.C. §1117 or other appropriate statute or law.

11.     For interest on all amounts found to be due to Plaintiff from Defendant, at the prevailing rate, from the date of said amounts or any part thereof became or becomes due.

12.     That the Court requires Defendant to notify its commercial associates, dealers, master distributors, suppliers, and customers of this Order.

13.     That Plaintiff be granted such other monetary, equitable and further relief, as this Court may deem appropriate under federal, state, and common law.

14.     That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violation thereof.

## DEMAND FOR JURY TRIAL

Gibson hereby demands a jury trial on all issues.

Respectfully submitted, this 1st day of December 2022.

/s/ *Stephen D. Howen*
Stephen D. Howen
State Bar No. 10117800
Law Office of Steve Howen
7111 Bosque Blvd., Suite 305
Waco, TX 76710
Telephone: (254) 826-6526
Facsimile: (254) 822-4926
steve@stevehowenlegal.com

Attorneys for Plaintiff
GIBSON BRANDS, INC.